IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

ADAM MARGULES,

                Plaintiff,

    v.

MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY
and WINTRUST LIFE FINANCE,

                Defendants,

Case No. 1:23-cv-02584-DG-SJB

---

## VERIFIED SECOND AMENDED COMPLAINT

Plaintiff Adam Margules, brings this Seconded Amended Complaint, by and through his attorneys, Hodgson Russ LLP, for money damages and declaratory relief against Defendants Massachusetts Mutual Life Insurance Company and Wintrust Life Finance. In support of his claims, Plaintiff alleges as follows:

### THE PARTIES

1. Plaintiff Adam Margules is an individual life insurance holder who maintains a residence at 3619 Bedford Avenue in Brooklyn, New York.

2. Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") is an insurance company incorporated in the State of Massachusetts with its principal place of business located at 1295 State Street in Springfield, Massachusetts.

3. Defendant Wintrust Life Finance ("Wintrust"), with principal offices located at One Newark Center, Suite 2200, 1085 Raymond Boulevard, Newark, New Jersey, is a division of Lake Forest Bank and Trust Company, N.A. ("Lake Forest Bank"), which is a

nationally chartered bank with a principal place of business in Lake Forest, Illinois. Lake Forest Bank is a wholly owned subsidiary of Wintrust Financial Corporation, which is an Illinois corporation with its principal place of business in Rosemont, Illinois.

## JURISDICTION AND VENUE

4. Plaintiff commenced this action in the Supreme Court of the State of New York, Kings County, on March 13, 2023, and effected service of the Summons and Complaint on Wintrust on March 21, 2023 and MassMutual on April 6, 2023.

5. On or about April 4, 2023, Wintrust removed the action to this Court under 28 U.S.C. § 1441 on diversity of citizenship grounds pursuant to 28 U.S.C. § 1332(a).

6. Venue is proper because this Court encompasses New York Supreme Court, Kings County, where the action was originally filed.

## FACTS

7. On July 15, 2011, Plaintiff secured life insurance from MassMutual under policy number 21144969 with limits of five million ($5,000,000.00) dollars ("the Policy"). A copy of the Policy is annexed hereto as **Exhibit A**.

8. In order to maintain this coverage, Plaintiff was required to pay premiums of $142,100.00-per-year over the course of ten consecutive years from 2011 until 2020 totaling $1,421,000.00 in premium payments.

9. In order to make these payments, Plaintiff took out a loan from FIRST Insurance Funding Corp. ("FIRST Insurance") in, initially, the principal amount of $142,100.00, to pay the annual premiums as reflected in a Master Promissory Note ("Master Note"). A copy of the Master Note is attached as **Exhibit B**.

10. As collateral, Plaintiff assigned the Policy to FIRST Insurance. The Assignment of Life Insurance Policy as Collateral ("Assignment"), a copy of which is attached as **Exhibit C**, was recorded by MassMutual in July 2011. It designates Plaintiff as the Borrower, FIRST Insurance as the Assignee, and was signed by Plaintiff's parents as the designated beneficiaries of the Policy consenting to the Assignment.

11. Upon information and belief, the "Consent and Acknowledgement" form to be signed by a MassMutual representative, confirming its consent to the Assignment, was never in fact executed by MassMutual.

12. The Master Note was amended three times and the loan increased accordingly. The First Amendment dated November 8, 2016, attached as **Exhibit D**, reflects FIRST Insurance as the lender and a principal balance of $710,500.00. The Second Amendment dated December 1, 2017, annexed as **Exhibit E**, reflects Wintrust as the lender with a principal balance of $994,700.00.

13. To lessen the annual premium burden from $142,100.00 to $101,430.10, on or around December 18, 2018, Plaintiff reduced the policy limits from $5 million to $3,568,969.08. *See* Request for Amendment of Contract dated December 18, 2018, a copy of which is attached as **Exhibit F**. In doing so there was a refund issued to Plaintiff by MassMutual in the amount of $252,514.92 on or around December 21, 2018.

14. The Third Amendment dated July 12, 2019, annexed as **Exhibit G**, also reflects Wintrust as the lender with a principal balance of $882,835.27 and loan maturity date of July 14, 2020.

15. On or around August 9, 2019 Plaintiff issued a collateral payment in the amount of $118,457.00 that was to be used by Wintrust to set up a money market account for Plaintiff to pay the remaining premiums, as they became due.

16. Plaintiff was neither notified, nor consented, to the further Assignment of the Policy from FIRST Insurance to Wintrust.

17. Upon information and belief, nor did MassMutual consent to any such further Assignment to Wintrust, in keeping with the policy terms, which provide that "for any assignment to be binding on us, [MassMutual] must receive a signed copy of [the Assignment] at our Home Office." *See* Exhibit A, page 5.

18. In fact, the Third Amendment to Master Promissory Note provides that "the Assignment…shall remain in full force and effect and is hereby ratified and confirmed." *See* Exhibit G at page 1 of 4. Thus, Wintrust, in effect, "ratified and confirmed" FIRST Insurance's status as the policy Assignee.

19. Notwithstanding, according to Wintrust's Maturity Letter dated May 7, 2020, a copy of which is attached as **Exhibit H**, the payoff amount of Plaintiff's loan as of July 15, 2020, or the policy debt, was $1,061,205.88, relative to the policy value at that time of $1,130,650.00. *See* Exhibit A at Policy Specifications page 4 of 9.

20. In or around the spring and summer of 2020, Plaintiff and Wintrust were in frequent contact about further extending the loan's maturity date. During these discussions, Wintrust confirmed its willingness to extend Plaintiff's loan, in keeping with the prior Amendments and Plaintiff's history of making complete and timely interest payments totaling $280,518.95 up until that point.

21. Indeed, on June 4, 2020, Brian Burstein of Wintrust emailed Timothy Hillert, Plaintiff's designated agent under the Policy, as follows:

> I wanted to follow up with you and let you know that it looks like the funds we have on the deal will be enough to cover the collateral need. I'll send out the documents to open the money market account along with the renewal documents. Please let me know when you think the financial package will be sent.

A copy of this email is attached as **Exhibit I**.

22. Mr. Burstein followed up on June 5, 2020:

> Following up on our call, I've attached a sample payoff letter so the client can see the language used. As of June 15, 2020, the payoff…amount is $948,575.17 and the per diem would be $211.89. This payoff amount assumes that the $106,274.00 that is currently on the deal would also be used to pay off the loan. These figures are valid until July 15, 2020. After that date, a new payoff letter would need to be drafted with an updated payoff amount and a new per diem would need to be calculated. If the client decides that he would like to pay off, please have him send a letter or e-mail saying that he intends to do so and how (paying out of pocket, surrendering collateral, refinancing with another lender, etc.). Let me know if there's anything else I can do to assist.

A copy of this email is annexed as **Exhibit J**.

23. During that call, Mr. Hillert advised Brian Burstein of Wintrust that there would be a delay in securing the requested documents due to the timing amid the onset of the COVID-19 global pandemic. Among the documents being asked for by Wintrust, for instance, despite pertaining to issues predating the original loan, were a Letter of Explanation regarding a 2009 Federal Tax Lien and proof of the release of liens filed by a company named Metro Oil Co., Inc. back in 2005. Such documents are difficult to locate and retrieve in ordinary times, let alone amid a global pandemic.

24. Wintrust followed up by email on July 6, 2020, a copy of which is annexed as **Exhibit K**, asking: "How are the clients coming along with their financials?" The bottom of this email, and every Wintrust email, reads: "As COVID-19 continues to impact people and organizations around the world, our ongoing commitment to our customers, business partners, and employees remains our top priority."

25. Mr. Hillert promptly responded just minutes later: "He is working on it." A copy of this email is attached as **Exhibit L**.

26. Mr. Hillert, on behalf of Plaintiff, followed up by email on July 16, 2020: "Did the monies put in the Money market not secure the loan?" A copy of this email is attached as **Exhibit M**.

27. On July 29, 2020, Wintrust emailed Mr. Hillert: "We appreciate you providing us the tax returns however we still need the additional items." A copy of this email is annexed as **Exhibit N**.

28. On August 14, 2020, Mr. Hillert emailed Wintrust: "We are discussing with Adam[']s Lawyer if he wants to pay off the loan now or continue with the current payments. The policy does not lapse until 9/15. I would like some more time to continue these discussions as we are putting this together." A copy of this email is attached as **Exhibit O**.

29. On August 19, 2020, Wintrust emailed Mr. Hillert: "We will not be able to give you until September 15th. Without payment we will have to liquidate on Friday, August 21st." A copy of this email is annexed as **Exhibit P**.

30. Three hours later on August 19, 2020, Mr. Hillert responded: "September 10th will work." *See* Exhibit O.

31. On August 21, 2020, Wintrust emailed Mr. Hillert: "Unfortunately we will have to liquidate today. We have not received the arrears interest due, and as notified today was our final deadline." A copy of this email is attached as **Exhibit Q**.

32. Wintrust further emailed Mr. Hillert on August 21, 2020: "The lapse date of the policy is September 15th. If the deal is not funded by then it will lapse…" A copy of this email is annexed as **Exhibit R**.

33. Mr. Hillert responded on August 21, 2020:

When you start the liquidation process what does this mean?

The policy has not lapsed or is not close to lapse when it is 60 days for it to be funded.

I feel it has been the companies [sic] MO to liquidate this policy and it is concerning.

A copy of this email is attached as **Exhibit S**.

34. Wintrust countered on August 21, 2020: "Today was the drop dead date to receive the arrears interest. The surrender forms have been sent to Mass Mutual." A copy of this email is annexed as **Exhibit T**.

35. The Policy provides that it "may be surrendered in full for its cash surrender value at any time while the Insured is still living…[to] be effective on the date we receive at our Home Office a written request, satisfactory to us, to surrender." *See* Exhibit A at page 11.

36. However, it may only be surrendered by a person or entity authorized to surrender the policy. Because MassMutual had no record of Wintrust as the policy Assignee, Wintrust was unauthorized to surrender the policy.

37. Further, in its capacity as a premium finance company, Wintrust was required to uphold its obligations imposed upon it by the New York Banking Law. Section 576 governs policy cancellations. It required Wintrust to mail a copy of the notice of intent to cancel the policy to Plaintiff's insurance agent or broker. *See* §576(1)(a).

38. Timothy Hillert was Plaintiff's insurance agent or broker. Yet, upon information and belief, he was never mailed a copy of any notice of intent to cancel the policy.

39. New York Banking Law §576(1)(d) further provides that, absent a timely cure of the default cited in the notice of intent to cancel, an authorized premium finance company may then cancel such insurance contract. In doing so, however, it must mail a copy of the notice of cancellation to the insured and his insurance agent.

40. Upon information and belief, Mr. Hillert was likewise never mailed a copy of any notice to cancel the policy.

41. The premium finance company must then, within 60 days of cancellation, "return whatever gross unearned premiums are due under the insurance contract…on a pro rata basis to the premium finance agency for the benefit of the insured…" *See* New York Banking Law §576(1)(f).

42. In the aftermath of the unauthorized surrender of the policy, Plaintiff never received an accounting or refund check with respect to any unearned premiums.

43. New York Insurance Law §3428(c), applicable to insurance carriers like MassMutual, corresponds with New York Banking Law §576, applicable to premium finance companies. In sum and substance, it provides that an authorized insurer shall not honor a power of attorney or other authority to cancel an insurance contract in connection with insurance premium financing, except in accordance with Banking Law §576.

44. Upon information and belief, MassMutual failed to take any steps to ensure Wintrust's compliance with Banking Law §576. Instead, MassMutual blindly accepted Wintrust's surrender of the policy and issued a check to Wintrust for the policy debt, without notifying Plaintiff or Mr. Hillert.

45. More specifically in this regard, on September 4, 2020, Mr. Hillert emailed Wintrust:

> After speaking with Adam and his Attorney, he would like to send the interest payment before the end of next week. What is the total interest payment with late fees that will be due?
>
> The Accountant is working on obtaining the Federal Tax Lien release notice from the IRS. He will also be preparing the Financial Statement.
>
> For the Metro Oil Co Lien do you have the Index No. for this Lien? Or any information you can provide. The Attorney will work to obtain the release from the court records in Conn.

A copy of this email is attaches as **Exhibit U**.

46. Wintrust responded on September 8, 2020:

> We reached out to MassMutual today and were told that the check would be mailed out to us tomorrow. We cannot halt this process without having received all renewal requirements. Given that the check from MassMutual is going to be mailed tomorrow, this will not be possible and the policy will be surrendered.

A copy of this email is annexed as **Exhibit V**.

47. Mr. Hillert responded on September 9, 2020, in pertinent part: "This is extremely upsetting to hear you liquidated the policy before 9/15/20. It sounds from your mail you could have the check/payment stopped but refused to." A copy of this email is attached as **Exhibit W**.

48. Indeed, Wintrust unilaterally surrendered the Policy to MassMutual for purposes of cashing it in to pay off the balance of Plaintiff's Note.

49. MassMutual accepted the surrender without consulting Plaintiff and issued Wintrust a check for the balance of the Note.

50. In effect, Wintrust used Plaintiff's life insurance proceeds to pay off the very loan that Wintrust had already agreed to extend pending receipt of documents that Plaintiff was endeavoring to secure amid a global pandemic.

51. After paying $280,518.95 in interest alone since 2011 with just one annual premium payment left to be made before solidifying $3,568,969.08 coverage for life without any further premium payment obligations, Plaintiff lost his coverage entirely.

52. According to the Policy, "the policy cannot be reinstated if it has been surrendered for its cash surrender value." *See* Exhibit A at page 10.

53. However, the Policy debt was less than the Policy value at the time of surrender. Moreover, the policy can be reinstated under these circumstances where it was improperly surrendered without justification, by an unauthorized entity and without Plaintiff's consent.

54. To that end, Plaintiff contacted MassMutual about reinstatement of the Policy. MassMutual agreed that, under these circumstances, reinstatement is possible but requires a Court Order to do so. MassMutual thereafter issued the letter attached hereto as **Exhibit X**.

55. Against this backdrop, a declaratory judgment reinstating Plaintiff's coverage under the Policy is warranted as a matter of law and equity.

56. Otherwise, Defendants should be held liable to Plaintiff for the full value of the Policy, in the amount of $3,568,969.08, under breach of contract, bad faith, unjust enrichment and/or breach of duty of good faith and fair dealing principles. Defendants also violated New York Banking Law Section 576, by failing to issue or otherwise tender Plaintiff a check in the amount of the gross unearned premiums, and the corresponding New York Insurance Law Section 3428(c).

57. Either way, Defendants should be held liable to Plaintiff for the costs, fees, disbursements and expenses incurred pursuing this relief.

## AS AND FOR A FIRST CAUSE OF ACTION
### (declaratory judgment against MassMutual)

58. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

59. Plaintiff fulfilled his obligations and conditions precedent under the applicable Policy to be entitled to continued coverage under said Policy.

60. Notwithstanding, the Policy was improperly surrendered and canceled by Wintrust, an unauthorized Assignee, without Plaintiff's consent and without proper notice, despite Plaintiff's timely and complete payments towards coverage over the course of ten years totaling $280,518.95 in interest alone, and despite being on the cusp of fulfilling his premium payment obligations.

61. A Court Order reinstating the Policy is therefore warranted.

## AS AND FOR A SECOND CAUSE OF ACTION
### (breach of contract against MassMutual and Wintrust)

62. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

63. By improperly surrendering the Policy and tendering a check to an unauthorized Assignee for the loan debt without Plaintiff's knowledge and consent and without proper notice, Defendants breached their Contracts (Policy, Assignment, Notes, etc.) with Plaintiff.

64. More specifically, by acting on Wintrust's surrender and cancellation of the policy, MassMutual breached, *inter alia*, the provision of the policy which provides that "for any assignment to be binding on us, [MassMutual] must receive a signed copy of [the Assignment] at our Home Office." *See* Exhibit A, page 5.

65. And by surrendering the policy, Wintrust breached, *inter alia*, the Third Amendment to Master Promissory Note by acting as an unauthorized Assignee despite its ratification and confirmation of the Assignment naming FIRST Insurance as the Assignee.

66. Plaintiff incurred substantial damages as a result of these breaches, such that he lost a $3,568,969.08 life insurance policy on the cusp of the premiums being paid off and after making $280,518.95 in interest payments.

## AS AND FOR A THIRD CAUSE OF ACTION
### (bad faith against MassMutual)

67. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

68. MassMutual acted in bad faith and in breach of the Policy issued to Plaintiff by improperly surrendering and canceling the Policy in the absence of a valid Assignment designating Wintrust as the Assignee.

69. By reason of MassMutual's bad faith and breach of its contractual obligations, Plaintiff has been damaged in his loss of a $3,568,969.08 life insurance policy on the cusp of the premiums being paid off and after making $280,518.95 in interest payments, plus attorneys' fees, expenses, costs and disbursements incurred pursuing this relief.

70. Plaintiff is also entitled to punitive damages in an amount to be proven at trial and the statutory interest that continues to accrue since the date of MassMutual's breach of its contractual obligations to Plaintiff.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(unjust enrichment against MassMutual and Wintrust)**

71. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

72. Defendants have received a benefit to the detriment of Plaintiff in that Defendants received a substantial amount of money from Plaintiff (i.e., interest and premium payments) without providing the product ($3,568,969.08 in life insurance coverage) that Plaintiff bargained for.

73. Given Plaintiff's performance and his reasonable expectation that Defendants would reciprocate by likewise honoring their obligation to provide the finances and coverage, Defendants will be unjustly enriched, to the unfair detriment of Plaintiff, if permitted to retain Plaintiff's money and revoke Plaintiff's coverage without upholding their end of the bargain.

74. Based upon the foregoing, absent reinstatement of the Policy, it is requested that the Court enter judgment in favor of Plaintiff and against Defendants for damages in the amount of not less than $3,568,969.08, plus accruing interest, attorneys' fees and disbursements occasioned by the prosecution of this action.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(breach of duty of good faith and fair dealing against MassMutual and Wintrust)**

75. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

76. New York State law imposes a duty of good faith and fair dealing on all parties to a contract. This duty requires each contracting party to refrain from doing anything that may have the effect of destroying or injuring the other party's rights to receive benefits under the contract.

77. Likewise, this duty includes an affirmative promise to abide by any promises that a reasonable party would be justified in expecting under the contract.

78. Here, the Policy and Notes at issue between the parties were entered into in New York State. These contracts incorporate Defendants' covenant of good faith and fair dealing in the course of its performance of their obligations under the contracts.

79. Defendants breached this covenant by inducing Plaintiff to bargain with them for an item that was never ultimately provided (life insurance coverage), and by accepting money (premium payments and interest payments) for that item but then unilaterally revoking coverage amid a global pandemic and ostensible good-faith negotiations on the cusp of Plaintiff's final premium payment, despite a 10-year history of successfully doing business together.

80. This breach resulted in damages to Plaintiff in an amount to be determined at trial but not less than $3,568,969.08, plus accruing statutory interest from the date of Defendants' breach, as well as Plaintiff's attorneys' fees, costs and disbursements incurred prosecuting this action.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**(Violation of New York Banking Law § 576 against Wintrust)**

81. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

82. Wintrust violated New York Banking Law § 576 by failing to provide the requisite notices to Plaintiff and his insurance agent prior to surrendering the policy and by failing to issue or otherwise tender Plaintiff a check in the amount of the gross unearned premiums.

83. As a result of this statutory violation, Plaintiff was deprived of the opportunity to protect his policy interests and is therefore entitled, absent reinstatement of the policy, to judgment in favor of Plaintiff and against Wintrust for the gross unearned premiums that Plaintiff is entitled to pursuant to New York Banking Law § 576 and damages in the amount of not less than $3,568,969.08, plus accruing interest, attorneys' fees and disbursements occasioned by the prosecution of this action.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Violation of New York Insurance Law § 3428(c) against MassMutual)**

84. Plaintiff repeats and re-alleges all of the foregoing allegations with the same force and effect as those set forth herein at length.

85. New York Insurance Law § 3428(c) prohibits authorized insurers from honoring any authority to cancel an insurance contract in connection with premium financing, except in accordance with New York Banking Law § 576.

86. Because MassMutual honored Wintrust's surrender and cancellation of the Policy despite Wintrust's violation of New York Banking Law § 576, MassMutual violated Insurance Law § 3428(c).

87. This violation resulted in the wrongful retention of unearned premiums and the wrongful surrender of Plaintiff's insurance policy, and Plaintiff is therefore entitled to judgment in favor of Plaintiff and against MassMutual for the gross unearned premiums and/or policy reinstatement and/or judgment in favor of Plaintiff and against MassMutual for damages in the amount of not less than $3,568,969.08, plus accruing interest, attorneys' fees and disbursements occasioned by the prosecution of this action.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(a) Upon the First Cause of Action that Plaintiffs is entitled to Policy reinstatement and awarding Plaintiff his attorneys' fees, costs and disbursements in bringing this action and in pursuing this relief;

(b) Upon the Second Cause of Action that Defendants breached their contractual obligations to Plaintiff under the Policy, Assignment, Notes, etc. such that Plaintiff incurred damages by losing $3,568,969.08 worth of life insurance coverage and by incurring fees, costs and expenses pursuing the Policy's reinstatement; and

(c) Upon the Third Cause of Action declaring that MassMutual has acted in bad faith entitling Plaintiff to an award encompassing any and all damages sustained including punitive damages in an amount to be proven at trial;

(d) Upon the Fourth Cause of Action that Defendants have been unjustly enriched by retaining the interest and premium payments yet revoking the reciprocal insurance coverage bargained for, such that Plaintiff incurred damages by losing $3,568,969.08 worth of life insurance coverage and incurring fees, costs and expenses pursuing this relief;

(e) Upon the Fifth Cause of Action that Defendants breached their duty of good faith and fair dealing by retaining the interest and premium payments yet revoking the reciprocal insurance coverage bargained for, such that Plaintiff incurred damages by losing $3,568,969.08 worth of life insurance coverage and incurring fees, costs and expenses pursuing this relief;

(f) Upon the Sixth Cause of Action that Wintrust breached its statutory duty to Plaintiff under New York Banking Law §576 by failing to provide any notice of intent to cancel the policy and, upon canceling the policy, failing to issue or otherwise tender Plaintiff a check in the amount of the gross unearned premiums, such that Plaintiff is entitled to the gross unearned premiums and damages in the amount of not less than $3,568,969.08 worth of life insurance coverage plus fees, costs and expenses pursuing this relief;

(g) Upon the Seventh Cause of Action that MassMutual breached its statutory duty to Plaintiff under New York Insurance Law § 3428(c), such that Plaintiff incurred damages by losing $3,568,969.08 worth of life insurance coverage and incurring fees, costs and expenses pursuing this relief; and

(h) Awarding such other and further relief as the Court may deem just and proper.

DATED: Albany, New York
June 20, 2023

**HODGSON RUSS LLP**
*Attorneys for Plaintiff*
By: *s/Christian J. Soller*
Christian J. Soller
677 Broadway, Suite 401
Albany, New York 12207
(518) 465-2333

# VERIFICATION

STATE OF FLORIDA ) 
                                 ) ss.:
COUNTY OF MIAMI-DADE )

Adam Margules, being duly sworn, deposes and says that:

I am the named Plaintiff in this action and know the contents of the Second Amended Complaint to be true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief. As to those matters, I believe them to be true based upon my personal knowledge.

Dated: June ___, 2023
        Miami, Florida

_____
ADAM MARGULES

Sworn to before me this
___ day of June 2023

_____
Notary Public