UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Adam Margules,

                Plaintiff,              **MEMORANDUM & ORDER**
                                            23-CV-02584 (DG) (CLP)

        -against-

Massachusetts Mutual Life Insurance Company
and Wintrust Life Finance,

                Defendants.
------------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

On March 13, 2023, Plaintiff Adam Margules commenced this action against Defendants

Massachusetts Mutual Life Insurance Company ("MassMutual") and Wintrust Life Finance

("Wintrust") in the Supreme Court of the State of New York, County of Kings.  *See* ECF No. 1

at 1-2; ECF No. 1-1.  The case was removed to this Court on April 4, 2023.  *See* ECF No. 1.[1]

On June 21, 2023, Plaintiff filed the operative Second Amended Complaint against

Defendants MassMutual and Wintrust.  *See* Verified Second Amended Complaint ("SAC"), ECF

No. 25.  In summary, Plaintiff's claims stem from the surrender/cancelation of Plaintiff's life

insurance policy and payment by Defendant MassMutual to Defendant Wintrust in connection

therewith.  *See generally* SAC.

Plaintiff asserts seven causes of action in the Second Amended Complaint: (1)

declaratory judgment against Defendant MassMutual, (2) breach of contract against Defendants

MassMutual and Wintrust, (3) bad faith against Defendant MassMutual, (4) unjust enrichment

against Defendants MassMutual and Wintrust, (5) breach of duty of good faith and fair dealing

against Defendants MassMutual and Wintrust, (6) violation of New York Banking Law § 576

---

[1]  Familiarity with the procedural history and background of this action is assumed herein.

against Defendant Wintrust, and (7) violation of New York Insurance Law § 3428(c) against Defendant MassMutual.  *See* SAC ¶¶ 58-87.  Plaintiff principally seeks reinstatement of the life insurance policy and/or money damages.  *See generally* SAC.

Pending before the Court are three motions: (1) Defendant Wintrust's Motion for Summary Judgment, *see* Defendant Wintrust's Notice of Motion for Summary Judgment, ECF No. 55; Defendant Wintrust's Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 55-1 ("Wintrust Br."); Defendant Wintrust's Local Rule 56.1 Statement ("Wintrust 56.1"), ECF No. 55-28; Defendant Wintrust's Reply in Support of Motion for Summary Judgment ("Wintrust Reply"), ECF No. 57, (2) Defendant MassMutual's Motion for Summary Judgment, *see* Defendant MassMutual's Notice of Motion for Summary Judgment, ECF No. 62; Defendant MassMutual's Memorandum of Law in Support of Motion for Summary Judgment ("MassMutual Br."), ECF No. 62-1; Defendant MassMutual's Local Rule 56.1 Statement ("MassMutual 56.1"), ECF No. 62-33; Defendant MassMutual's Reply in Support of Motion for Summary Judgment ("MassMutual Reply"), ECF No. 64, and (3) Plaintiff's Motion to Amend Complaint and for Summary Judgment, *see* Plaintiff's Notice of Motion to Amend Complaint and for Summary Judgment, ECF No. 58-1; Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Br."), ECF No. 58-14; Proposed Verified Third Amended Complaint, ECF No. 58-15; Plaintiff's Corrected Local Rule 56.1 Statement ("Pl. 56.1"), ECF No. 58-16;[2] Plaintiff's Reply in Support of Motion for Summary Judgment and to Amend the Complaint ("Pl. Reply"), ECF No. 61.

Plaintiff opposes each Defendant's motion.  *See* Plaintiff's Memorandum of Law in

---

[2]   The Court accepts the corrected version of Plaintiff's Local Rule 56.1 Statement.

Opposition to Defendants' Motions for Summary Judgment ("Pl. Opp."), ECF Nos. 56, 63;[3]

Plaintiff's Response to Defendant Wintrust's Local Rule 56.1 Statement ("Pl. Response to

Wintrust 56.1"), ECF Nos. 56-1, 63-2; Plaintiff's Response to Defendant MassMutual's Local

Rule 56.1 Statement ("Pl. Response to MassMutual 56.1"), ECF Nos. 56-2, 63-1.  Each

Defendant opposes Plaintiff's Motion to Amend Complaint and for Summary Judgment.  *See*

Defendant MassMutual's Memorandum of Law in Opposition, ECF No. 59; Defendant

MassMutual's Response to Plaintiff's Local Rule 56.1 Statement, ECF No. 59-1; Defendant

Wintrust's Memorandum of Law in Opposition ("Wintrust Opp."), ECF No. 60; Defendant

Wintrust's Response to Plaintiff's Local Rule 56.1 Statement, ECF No. 60-1.

As set forth below, Defendant Wintrust's motion is granted, Defendant MassMutual's

motion is granted, and Plaintiff's motion is denied.

## BACKGROUND

### I.    Relevant Factual Background[4]

Unless otherwise indicated, the following facts are undisputed.[5]

---

[3]  Plaintiff filed one opposition brief – at both ECF No. 56 and ECF No. 63 – addressing both Defendants' motions for summary judgment.

[4]  In light of the substantial overlap among the parties' respective motions, the Court sets forth the facts together here and does not in all instances note minor discrepancies.  The Court has, however, considered any such discrepancies and has considered each motion on its own merits.

[5]  Any citation to the parties' Local Rule 56.1 Statements incorporates by reference the documents cited therein.  Each party has submitted its own set of exhibits in connection with its respective motion.  *See generally* ECF Nos. 55, 58, 62.  Many of the parties' exhibits are duplicative of those submitted by another party.  Where the Court refers to particular exhibits, the Court generally refers to the exhibits submitted by Defendant Wintrust, ECF Nos. 55-3 to 55-25.  The Court uses the page numbers generated by the Court's electronic case filing system ("ECF") when referring to the exhibits.

### A.     The Life Insurance Policy

On July 15, 2011, Defendant MassMutual issued the Whole Life Legacy 10 Pay Policy, policy number 21144969 (the "Policy"), to Plaintiff insuring his life in the amount of $5,000,000.  MassMutual 56.1 ¶ 3; *see* Wintrust 56.1 ¶ 4; Pl. 56.1 ¶ 2.  The Policy designated Plaintiff's parents as the beneficiaries and Timothy Hillert ("Hillert") as Plaintiff's insurance agent.  Pl. 56.1 ¶ 2.[6]  The Policy required annual premium payments of $142,100 for 10 consecutive years in order to maintain the coverage.  MassMutual 56.1 ¶ 3.

The Policy was assignable and provided in relevant part:

> This policy may be assigned.  However, for any assignment to be binding on us, we must receive a signed copy of it at our Home Office.  We will not be responsible for the validity of any assignment.
>
> Once we receive a signed copy of an assignment, the rights of the Owner and the interest of any Beneficiary or any other person will be subject to the assignment.  An assignment is subject to any policy debt.

Policy at 20, ECF No. 55-5; *see also* MassMutual 56.1 ¶ 4; Wintrust 56.1 ¶ 5.

The Policy could be surrendered and provided in relevant part:

> The policy may be surrendered in full for its cash surrender value at any time while the Insured is living.  The surrender will be effective on the date we receive at our Home Office a written request, satisfactory to us, to surrender.  This policy will terminate as of the date of surrender.

Policy at 26; *see also* MassMutual 56.1 ¶ 5; Wintrust 56.1 ¶¶ 6-7.  In instances where a policy is assigned as collateral for a premium financing loan, the right to surrender is generally ceded to the premium financing lender until the loan terms are satisfied.  MassMutual 56.1 ¶ 5.

Under the Policy, premiums were payable in advance of July 15 each year.  *See* Policy at

---

[6]   At all relevant times, Hillert served as Plaintiff's insurance agent and acted as Plaintiff's designated agent in his communications with Defendants Wintrust and MassMutual regarding Plaintiff's life insurance policy and premium financing arrangement (discussed further below).  Wintrust 56.1 ¶¶ 2-3; *see also* MassMutual 56.1 ¶ 2.

6, 9, 19.  The Policy contained a Grace Period provision as follows:

> After the first premium has been paid, we allow a 31-day grace period to pay each following premium.  This means that each premium after the first can be paid within 31 days after its due date.  During this grace period the policy remains in full force.  If a premium is not paid by the end of this grace period, the policy will lapse as of the premium due date.

Policy at 19; *see also* Policy at 24.

> The Policy also provided:

> After this policy has lapsed, it may be reinstated – that is, put back in full force.  However, the policy cannot be reinstated if it has been surrendered for its cash surrender value.  Reinstatement must be made within five years after the date of lapse and while the Insured is living.

Policy at 25.

### B.    The Loan and the Master Note

On July 19, 2011, Plaintiff obtained a loan from FIRST Insurance Funding Corp. ("FIRST Insurance") to pay the principal amount of $142,100.00 to fund annual premium payments under the Policy (the "Loan").  Wintrust 56.1 ¶ 9; *see also* MassMutual 56.1 ¶ 9; Pl. 56.1 ¶ 7.  The Loan was memorialized by, among other things, a Master Promissory Note that Plaintiff executed on July 19, 2011 (the "Master Note").  Wintrust 56.1 ¶ 10; *see also* MassMutual 56.1 ¶ 9.

Under the Master Note, Plaintiff was defined as "Borrower" and FIRST Insurance was defined as "Lender."  *See* Master Note at 1, ECF No. 55-7; Wintrust 56.1 ¶ 11; *see also* Pl. 56.1 ¶ 8.[7]  In the Disclaimers section, the Master Note provided in relevant part:

> Borrower understands and agrees that (i) this is a loan and not an insurance transaction, (ii) the financing transaction contemplated by this master promissory note and any collateral documents or other documents entered into in connection herewith . . . is a transaction separate and distinct from the insurance transaction

---

[7]    Defendant MassMutual was not a party to the Master Note or the Loan.  MassMutual 56.1 ¶ 10.

> and the issuance of any insurance policy, and (iii) the lender was in no way involved in the sale, structuring or issuance of the insurance policy.  The borrower further understands and agrees that borrower will be held responsible for, and the borrower agrees to satisfy, all financial obligations under the terms of the loan documents regardless of any future decision by borrower or any other party to contest, challenge, unwind or rescind the financed insurance policy or the issuance thereof.

Master Note at 10 (capitalization and bolding not retained); *see also* MassMutual 56.1 ¶ 10.

Plaintiff promised that on the Maturity Date defined in the Master Note, he would pay to FIRST Insurance the principal amount of $142,100.00 in addition to any future loans that FIRST Insurance might issue, with interest.  Wintrust 56.1 ¶ 12; *see also* Master Note at 2; MassMutual 56.1 ¶ 9.  As set forth in the Master Note, the Maturity Date was the date on which the Note "shall become due and payable," which date was:

> the date of the earliest of the following events: (i) cancellation, endowment or termination of any Insurance Policy; (ii) the acceleration of the maturity of the amounts due hereunder upon an Event of Default (as herein defined) in accordance with the provisions of this Note; (iii) the death of any person insured under the Insurance Policy; (iv) sixty (60) days prior to the expiration of the Insurance Policy or (v) the fifth (5th) anniversary of the Policy Issue Date.

Master Note at 4; *see also* Wintrust 56.1 ¶ 13.

The Master Note provided that upon "Borrower's failure to make any payment when due," which was one "Event of Default" defined in the Master Note:

> Lender may, if such Event of Default has not been remedied by Borrower within fifteen (15) days after the occurrence of such Event of Default, at its option to the maximum extent permitted by applicable law, (a) accelerate the maturity of this loan, declare all principal, interest and other charges payable hereunder immediately due and payable and seek any and all other remedies available for the enforcement of this Note under the Assignment, at law, in equity or otherwise and (b) in its sole discretion, (i) cancel the Insurance Policy and demand the return of and receive from the Insurer any and all amounts and property otherwise payable to the Borrower, (ii) request a loan or distribution on the Insurance Policy (iii) take any other action with respect to the Insurance Policy, including surrender, in order to realize the value therefrom, and (iv) foreclose or take any other similar action with respect to any other collateral that has been pledged as security for the Note.

Master Note at 6; Wintrust 56.1 ¶ 14; *see also* MassMutual 56.1 ¶ 11.

Under the Master Note, Plaintiff was required to "deliver and/or cause to be delivered to Lender such other certificates, opinions, documents and instruments relating to the Loan as Lender reasonably may request prior to or as of the Loan Date or at any time thereafter" and the Master Note provided that "[a]ll deliverables . . . shall be reasonably satisfactory in form and substance to Lender." *See* Master Note at 4; Wintrust 56.1 ¶ 15. Plaintiff also agreed when he signed the Master Note that it "shall inure to the benefit of the Lender and its successors and assigns." Wintrust 56.1 ¶ 16; *see also* Master Note at 9.

The Master Note provided that it "shall be governed by the laws of the State of New York." Master Note at 9; *see also* Wintrust 56.1 ¶ 17.

### C.    The Assignment Agreement with FIRST Insurance

On July 19, 2011, in accordance with the terms of the Master Note, Plaintiff, FIRST Insurance, and the beneficiaries under the Policy signed an Assignment of Life Insurance Policy as Collateral agreement (the "Assignment Agreement"). MassMutual 56.1 ¶ 12. By signing the Assignment Agreement, Plaintiff assigned, transferred, pledged, and granted all of his "claims, options, privileges, rights, title and interest in, to and under" the Policy to FIRST Insurance. Assignment Agreement at 3, ECF No. 55-8; *see also* MassMutual 56.1 ¶ 13; Wintrust 56.1 ¶ 20; Pl. 56.1 ¶ 10.

The Assignment Agreement expressly granted FIRST Insurance the "sole right to withdraw from or surrender the Insurance Policy and receive the surrender value thereof at any time provided by the terms of the Insurance Policy and at such other times as the Insurer may allow." Assignment Agreement at 3; MassMutual 56.1 ¶ 13; *see also* Wintrust 56.1 ¶ 21. The Assignment Agreement also included a Successors and Assigns provision, which stated that

"[a]ll of the terms and provisions of this Assignment shall be binding upon, and inure to the benefit of, and be enforceable by, the respective successors, executors, administrators and assigns of the parties hereto."  Assignment Agreement at 6-7; MassMutual 56.1 ¶ 14; *see* Wintrust 56.1 ¶ 22.  The Assignment Agreement provided that it "shall be governed by, and interpreted in accordance with, New York law."  Assignment Agreement at 7; Wintrust 56.1 ¶ 23.

On July 20, 2011, Defendant MassMutual received a copy of the Assignment Agreement and recorded on Defendant MassMutual's system that FIRST Insurance was now collateral assignee of the Policy.  MassMutual 56.1 ¶ 15.

### D.     The First Amendment to the Master Note

On November 8, 2016, Plaintiff executed an amendment to the Master Note (the "First Amendment").  *See* Wintrust 56.1 ¶ 24.  Under the First Amendment, the principal amount due thereunder was $710,500.00.  Wintrust 56.1 ¶ 25.

The purpose of the First Amendment was to, among other things, amend the section of the Master Note titled "MATURITY DATE."  *See* First Amendment at 2, ECF No. 55-9; Wintrust 56.1 ¶¶ 26-27.  The First Amendment stated, as relevant here: "Borrower hereby reaffirms each of its covenants and other agreements set forth in [the Master Note] (as amended by this Amendment) as if the Borrower were entering into [the Master Note] on the date hereof, and the Borrower reaffirms the continued validity of its obligations under [the Master Note]."  First Amendment at 3.

### E.     FIRST Insurance Merger

Subsequent to the execution of the First Amendment, FIRST Insurance merged with Lake Forest Bank & Trust Company, N.A. ("Lake Forest") (the "Merger").  *See* Notice of Merger at 2,

ECF No. 55-14.

According to Defendant Wintrust, FIRST Insurance Funding and Defendant Wintrust then became separate divisions of Lake Forest, Wintrust 56.1 ¶ 31, and FIRST Insurance's employees and their roles remained the same, except that their FIRST Insurance email addresses became Wintrust email addresses, Wintrust 56.1 ¶ 32.

In October 2017, Defendant MassMutual received a letter from Defendant Wintrust indicating that FIRST Insurance merged with and into Defendant Wintrust's parent company, Lake Forest. MassMutual 56.1 ¶ 16; *see also* Notice of Merger at 2; Wintrust 56.1 ¶ 35. In relevant part, the letter stated:

> This letter is a supplement to each Collateral Assignment with respect to the rights and benefits granted to [First Insurance Funding Corp. and/or First Insurance Funding Corp. of California] thereunder. Please be advised that, as of October 2, 2017, First Insurance Funding Corp. and First Insurance Funding Corp. of California, wholly owned subsidiaries of Lake Forest Bank & Trust Company, N.A., formally merged with and into Lake Forest Bank & Trust Company, N.A. For your reference, a copy of the related merger filing is attached hereto.
>
> As a result of such merger, First Insurance Funding Corp. and First Insurance Funding Corp. of California are now known as, and will continue doing business as, Wintrust Life Finance, a Division of Lake Forest Bank & Trust Company, N.A. . . . Accordingly, as of October 2, 2017 . . . [a]ll references to "Assignee" in each Collateral Assignment shall mean and be a reference to Wintrust Life Finance, a Division of Lake Forest Bank & Trust Company, N.A.

Notice of Merger at 2 (emphasis omitted). Attached to the letter was a copy of the related merger filing. *See generally* Notice of Merger. According to the merger filing, FIRST Insurance merged with Lake Forest Bank & Trust Company, N.A. and the surviving corporation was Lake Forest Bank & Trust Company, N.A. *See* Notice of Merger at 11.

According to Defendants Wintrust and MassMutual, Defendant Wintrust became the assignee of the Policy as collateral for the Loan as successor by merger. Wintrust 56.1 ¶ 33; *see*

MassMutual 56.1 ¶ 17.[8]  Plaintiff disputes that Defendant Wintrust is the legitimate assignee or successor of FIRST Insurance and asserts that none of the entities or people required to acknowledge any transfer of the assignment from FIRST Insurance to Defendant Wintrust acknowledged it, including but not necessarily limited to Defendant MassMutual, Plaintiff, Hillert, and the beneficiaries.  Pl. Response to Wintrust 56.1 ¶ 33; *see also* Pl. 56.1 ¶¶ 11-12.

### F.    The Second Amendment to the Master Note

On December 1, 2017 – which was after the Merger – Plaintiff executed a second amendment to the Master Note (the "Second Amendment").  *See* Wintrust 56.1 ¶ 36; MassMutual 56.1 ¶ 18.  The Second Amendment listed Plaintiff as Borrower and Defendant Wintrust as Lender.  Second Amendment at 2, ECF No. 55-15; *see also* Wintrust 56.1 ¶ 37; MassMutual 56.1 ¶ 18.  Under the Second Amendment, the principal amount due was listed as $994,700.00.  *See* Wintrust 56.1 ¶ 38.

The purpose of the Second Amendment was to, among other things, amend the Maturity Date section of the Master Note.  *See* Second Amendment at 2; Wintrust 56.1 ¶ 39.  The Second Amendment stated, as relevant here: "Borrower hereby reaffirms each of its covenants and other agreements set forth in [the Master Note] (as amended by this Amendment) as if the Borrower were entering into [the Master Note] on the date hereof, and the Borrower reaffirms the continued validity of its obligations under [the Master Note]."  Second Amendment at 2.

Following 2017, Plaintiff continued to work directly with Defendant Wintrust regarding the loan on the Policy.  *See* MassMutual 56.1 ¶ 19.

---

[8]   In October 2017, Defendant Wintrust also became the Lender of the Loan.  Wintrust 56.1 ¶ 34.

### G.    The Third Amendment to the Master Note

On July 12, 2019, Plaintiff executed a third amendment to the Master Note (the "Third Amendment" and collectively with the Master Note, First Amendment, and Second Amendment, the "Amended Master Note").  *See* Wintrust 56.1 ¶ 41.  The Third Amendment listed Plaintiff as Borrower and Defendant Wintrust as Lender.  Third Amendment at 2, ECF No. 55-16.  Under the Third Amendment, the principal amount due was listed as $882,835.27.  Third Amendment at 2; Wintrust 56.1 ¶ 42.

The purpose of the Third Amendment was to, among other things, amend the Maturity Date section of the Master Note.  *See* Third Amendment at 2; Wintrust 56.1 ¶ 43.  The Third Amendment stated, as relevant here: "Borrower hereby reaffirms each of its covenants and other agreements set forth in [the Master Note] (as amended by this Amendment) as if the Borrower were entering into [the Master Note] on the date hereof, and the Borrower reaffirms the continued validity of its obligations under [the Master Note]."  Third Amendment at 2.

### H.    Surrender History

From 2011 through at least 2020, annual premiums were due to be paid on the Policy by the policy date, which fell on July 15 of each year.  *See* MassMutual 56.1 ¶ 20.  There was a very limited period of time following the annual premium due date during which the failure to pay could be remedied to save the Policy from lapse.  MassMutual 56.1 ¶ 23.  From July 15 through September 15, the Policy could avoid lapse if premium payment was made during the grace period, or it could be reinstated up until that September 15 date.  MassMutual 56.1 ¶ 23.

Surrender forms on the Policy were submitted in 2012, 2017, and 2018, although each of those surrender requests was later rescinded.  *See* Letters at 2-4, ECF No. 58-10; *see also* MassMutual 56.1 ¶ 24.

Defendant MassMutual was paid in full the scheduled policy premiums owed it from 2011 through 2019.  Pl. 56.1 ¶ 14.

Hillert handled communications with the Lender on behalf of Plaintiff, who indicated that he trusted Hillert implicitly to do so.  MassMutual 56.1 ¶ 25.

## I.    Plaintiff's 2020 Default

Plaintiff's loan was set to mature on July 15, 2020.  MassMutual 56.1 ¶ 32.

In May 2020, Defendant Wintrust sent a letter to Plaintiff (the "May 2020 Maturity Letter") notifying him of the upcoming Maturity Date and advising that the Amended Master Note would become due and payable on July 15, 2020 and that the amount of $1,061,205.88 must be received on or before the Maturity Date.  MassMutual 56.1 ¶ 32; *see also* Wintrust 56.1 ¶¶ 45-46; Pl. 56.1 ¶¶ 17-18.

The letter further explained that failing to pay off the Amended Master Note by the Maturity Date would result in an "Event of Default" under the Amended Master Note, causing Defendant Wintrust to "exercise any and all remedies available to [it] under [the Amended Master Note], including, without limitation, surrender of the Policy."  MassMutual 56.1 ¶ 32; *see also* Wintrust 56.1 ¶ 47.  Plaintiff admitted that he was aware that his Policy was maturing in July.  MassMutual 56.1 ¶ 32.

The May 2020 Maturity Letter also advised that if Plaintiff wanted Defendant Wintrust to underwrite a new financing arrangement to fund premiums due on the Policy in 2020, Defendant Wintrust would need to receive the following by May 29, 2020:

- A personal financial statement for Plaintiff;
- Complete 2019 tax returns;
- Proof of Liquidity; and
- Letters of explanation regarding a federal tax lien from 2009 and Metro Oil Inc. lien from 2005 and proof that the liens had been released.

MassMutual 56.1 ¶ 33; *see* May 2020 Maturity Letter at 3, ECF No. 55-17; Wintrust 56.1 ¶ 48; Pl. 56.1 ¶ 19.

Hillert received a copy of the May 2020 Maturity Letter and he also attended a conference call with Plaintiff and Defendant Wintrust in late May regarding the information needed in order to evaluate a potential extension of the loan.  MassMutual 56.1 ¶ 34; *see also* Pl. 56.1 ¶ 18.

Plaintiff did not submit the documents required for underwriting a new financing arrangement by May 29, 2020.  Wintrust 56.1 ¶ 49.

In June and July 2020 email correspondence between Hillert and Defendant Wintrust, Defendant Wintrust reiterated its requests for additional documents necessary to perform underwriting for a new potential financing arrangement for Plaintiff.  Wintrust 56.1 ¶ 50.

Plaintiff did not submit the documents required to underwrite a new financing arrangement by July 15, 2020.  Wintrust 56.1 ¶ 51; *see* MassMutual 56.1 ¶ 35.

Around this time, Defendant Wintrust also informed Hillert that the Loan was not secure because the arrears interest had not been paid, and therefore, the Loan would need to be liquidated if renewal was not completed.  MassMutual 56.1 ¶ 36.  Plaintiff denies that the Loan was ever undercollateralized during the relevant time period.  *See* Pl. Response to MassMutual 56.1 ¶ 36.

On July 15, 2020, Defendant Wintrust sent a letter to Plaintiff and Hillert (the "July 2020 Maturity Letter") confirming that Plaintiff had failed to repay the Loan by July 15, 2020. Wintrust 56.1 ¶ 52; July 2020 Maturity Letter, ECF No. 55-21; *see also* MassMutual 56.1 ¶ 37. The July 2020 Maturity Letter stated that the Loan under the Amended Master Note had matured on July 15, 2020, and, therefore, Plaintiff was required to pay the full payoff amount of

$954,931.88 under the Amended Master Note on or before July 30, 2020, the "Final Due Date." Wintrust 56.1 ¶ 53; *see also* MassMutual 56.1 ¶ 37.  The July 2020 Maturity Letter further stated that Plaintiff's failure to pay off the amount due under the Amended Master Note by July 30, 2020 would cause Defendant Wintrust to seek any remedies available under the Amended Master Note, including "surrender of the Policy."  Wintrust 56.1 ¶ 54; *see also* MassMutual 56.1 ¶ 37.

At that point, Defendant Wintrust again asked for the financial documents needed to underwrite and evaluate Plaintiff's creditworthiness in order to extend the loan, but Defendant Wintrust did not receive all of the requested documents.  MassMutual 56.1 ¶ 38.  Specifically, Plaintiff was not able to provide the 2009 federal tax lien information and 2005 Metro Oil Inc. lien information.  *See* MassMutual 56.1 ¶ 38; Pl. Response to MassMutual 56.1 ¶ 38.[9]

According to Defendant Wintrust, "[a]s of July 23, 2020, Plaintiff also owed Defendant Wintrust $76,940.51 in interest that had accrued by the July 15, 2020 maturity date."  Wintrust 56.1 ¶ 56.

After the July 15, 2020 Maturity Date and the July 30, 2020 Final Due Date, Defendant Wintrust continued to give Plaintiff additional extensions of time to submit the arrears interest payment due and all of the documents necessary for underwriting a new financing arrangement as referenced in the May 2020 Maturity Letter.  Wintrust 56.1 ¶ 57; *see also* MassMutual 56.1 ¶ 39.

In the period between July 15, 2020 and August 21, 2020, Hillert submitted Plaintiff's tax returns to Defendant Wintrust but Plaintiff otherwise failed to either pay the arrears interest due

---

[9]  Although Plaintiff references a *2004* Metro Oil Inc. lien, that reference appears to be a typographical error.

and provide the other documents necessary for underwriting a new financing arrangement, or pay off the full amount due under the Amended Master Note.  Wintrust 56.1 ¶ 58.[10]  Because the Policy did not lapse until September 15, 2020, Hillert requested an extension of time until then to provide the documentation.  Pl. 56.1 ¶ 21.

On August 18, 2020, Defendant Wintrust emailed Hillert and warned that it would be required to surrender the Policy if it did not receive: (i) a personal financial statement for Plaintiff; (ii) a letter of explanation for Plaintiff's 2009 federal tax lien and 2005 Metro Oil Co. Inc. liens; and (iii) payment of the outstanding arrears interest.  Wintrust 56.1 ¶ 59.

On August 19, 2020, 35 days after the maturity date, Defendant Wintrust informed Hillert that the final deadline for receipt of the requested documents would be August 21, 2020. Wintrust 56.1 ¶ 60.

According to Defendant Wintrust, as of August 21, 2020, Plaintiff had made no payment due under the Amended Master Note, nor had he sent Defendant Wintrust (i) a personal financial statement for Plaintiff, (ii) a letter of explanation for Plaintiff's 2009 federal tax lien and 2005 Metro Oil Co. Inc. liens, and (iii) payment of the outstanding arrears interest.  Wintrust 56.1 ¶ 61.  Plaintiff asserts that the letter of explanation regarding the federal tax lien from 2009 and Metro Oil Inc. liens from 2005 and proof that the liens had been released were the only obstacle to further extending the loan because the funds Defendant Wintrust "ha[d] on the deal [would] be enough to cover the collateral need."  *See* Pl. 56.1 ¶¶ 19-20; *see also* Pl. Response to Wintrust 56.1 ¶ 55 (stating that "[t]he cash on deal that Wintrust had was sufficient to underwrite a new financing agreement, particularly given plaintiff's history and the timing, in the height of the

---

[10]  Plaintiff asserts that "[i]nterest was not at issue, as evidenced by the lack of any counterclaim asserted by Wintrust for interest owed."  *See* Pl. Response to Wintrust 56.1 ¶ 55.

pandemic amid his tenth and final year of premium payments"); Pl. Response to Wintrust 56.1 ¶ 57 (stating that the Loan "was otherwise fully collateralized" until September 15, 2020); Pl. Response to MassMutual 56.1 ¶ 40 (stating that "the loan was fully collateralized as Wintrust acknowledged at deposition" and that "[t]he only items that prevented a further loan extension were the 2009 Federal Tax Lien information and [2005] Metro Oil Co. Inc. lien information which plaintiff and Hillert could not secure due to the pandemic and age of the documents").

On August 21, 2020, Defendant Wintrust informed Hillert that it could not give Plaintiff any further extensions to pay the outstanding arrears interest and provide the requested documentation for underwriting and therefore would be sending the necessary surrender forms to Defendant MassMutual on that date.  Wintrust 56.1 ¶ 62.

**J.      The Surrender and Liquidation of the Policy**

On August 21, 2020, Defendant Wintrust completed and submitted its Request to Surrender Policy ("Surrender Request") to Defendant MassMutual. Pl. 56.1 ¶ 28; *see* Wintrust 56.1 ¶ 64.  The Surrender Request contained Signature Guidelines that stated: "Use these guidelines to determine signature and title requirements for all products and forms."  Surrender Request at 7, ECF No. 55-24.  The Signature Guidelines provided, in relevant part, that for "[c]ollaterally assigned policy:" "The owner and assignee must both sign.  However, if the right being exercised is granted to the assignee, only the assignee's signature is required."  Surrender Request at 8.  Plaintiff never signed the Surrender Request.  Pl. 56.1 ¶ 30.

Later on August 21, 2020, Defendant Wintrust emailed Hillert a copy of the Surrender Request that it submitted to Defendant MassMutual.  *See* Email Correspondence at 2, ECF No. 55-19.  Hillert subsequently informed Plaintiff that Defendant Wintrust had surrendered the Policy.  Wintrust 56.1 ¶ 66.

Defendant MassMutual confirmed with Defendant Wintrust that it should process the surrender.  MassMutual 56.1 ¶ 46.  After receiving confirmation, Defendant MassMutual processed the surrender and submitted a check for the surrender value in the amount of $969,565.81 to Defendant Wintrust.  MassMutual 56.1 ¶ 46; *see also* Wintrust 56.1 ¶ 67.[11] There were no unearned premiums following the liquidation of the Policy.  *See* Defendant Wintrust's Amended Objections and Answers to Plaintiff's First Set of Interrogatories ("Wintrust Interrogatory Responses") at 18, ECF No. 55-11; *see also* Wintrust 56.1 ¶¶ 68-69.

On September 4, 2020, Hillert emailed Defendant Wintrust that Plaintiff's "[a]ccountant is working on obtaining the Federal Tax Lien release notice from the IRS."  Pl. 56.1 ¶ 31.  Hillert also asked for the Index No. for the Metro Oil Lien to facilitate "obtain[ing] the release from the court records in Conn."  Pl. 56.1 ¶ 31.

Defendant Wintrust responded on September 8, 2020: "We reached out to Mass Mutual today and were told the check would be mailed out to us tomorrow.  We cannot halt the process without having received all renewal requirements.  Given that the check from Mass Mutual is going to be mailed tomorrow, this will not be possible and the policy will be surrendered."  Pl. 56.1 ¶ 32.

Hillert replied on September 9, 2020: "I am trying to track down a contact at Mass to go over the reinstatement process.  Who is the contact you are working with at Mass?  Can you provide the reinstatement instructions?  This is extremely upsetting to hear you liquidated the policy before 9/15/20.  It sounds from your email you [could] have the check/payment stopped but refuse to."  Pl. 56.1 ¶ 33.

---

[11] The check was apparently lost in the mail, voided, and reissued in the same amount on September 18, 2020, which reissued check Defendant Wintrust received and cashed or deposited on or around September 22, 2020.  Pl. 56.1 ¶ 36.

Following the surrender, Hillert contacted Defendant MassMutual to inquire about reinstating the Policy.  MassMutual 56.1 ¶ 50; *see also* Pl. 56.1 ¶ 34.  However, the Policy terms provided that the Policy cannot be reinstated if it has been surrendered for its cash value. MassMutual 56.1 ¶ 50.

## II.    Procedural Background and the Instant Motions

On March 13, 2023, Plaintiff filed a complaint in the Supreme Court of the State of New York, County of Kings.  *See* ECF No. 1 at 1-2; ECF No. 1-1.  On April 4, 2023, Defendant Wintrust removed the action from the Supreme Court of the State of New York, County of Kings to the United States District Court for the Eastern District of New York.  *See* ECF No. 1.

On May 3, 2023, Plaintiff filed an Amended Complaint.  *See* ECF No. 18.  On May 24, 2023, Plaintiff stated that he intended to further amend his pleadings.  *See* ECF No. 21. Defendants thereafter indicated that they did not believe further amendment was warranted.  *See* ECF Nos. 22, 23.  On June 6, 2023, the Court granted Plaintiff leave to further amend.  *See* June 6, 2023 Order.

On June 20, 2023, Plaintiff filed a Second Amended Complaint.  *See* ECF No. 24.  On June 21, 2023, Plaintiff filed a "corrected" Second Amended Complaint, which is the operative Second Amended Complaint.  *See* ECF No. 25.  On October 18, 2023, each Defendant filed an Answer.  *See* ECF Nos. 35, 36.  On March 26, 2024, the Court deemed discovery closed.  *See* March 26, 2024 Order.

On August 23, 2024, Defendant Wintrust filed a Motion for Summary Judgment, which motion Plaintiff opposes.  *See* ECF Nos. 55-57.  Defendant Wintrust asserts that it is entitled to summary judgment on each of Plaintiff's claims against Defendant Wintrust and principally argues (1) that the breach of contract claim against Defendant Wintrust fails as a matter of law

18

because Plaintiff has failed to identify which contracts and which provisions were allegedly

breached, because there is no genuine dispute that Defendant Wintrust complied with its

obligations under the relevant contracts, and because the undisputed facts establish that Plaintiff

did not comply with his obligations; (2) that the unjust enrichment claim is barred as duplicative

of the contract claim; (3) that the breach of the implied covenant claim also is barred as

duplicative of the breach of contract claim; and (4) that Plaintiff has failed to raise a genuine

dispute of fact related to Defendant Wintrust's compliance with Section 576 of the New York

Banking Law because the record establishes that Defendant Wintrust complied with Section

576(1)(a) by sending the final maturity letter to Plaintiff and Hillert on July 15, 2020 and

complied with Section 576(1)(d) by sending Defendant MassMutual a notice of surrender, which

Defendant Wintrust then forwarded to Plaintiff via Hillert, and also establishes that there were no

unearned premiums upon surrender of the Policy and therefore Defendant Wintrust did not

violate Section 576(1)(f).  *See generally* Wintrust Br.; Wintrust Reply.

On August 23, 2024, Defendant MassMutual filed a Motion for Summary Judgment,

which motion Plaintiff opposes.  *See* ECF Nos. 62-64.  Defendant MassMutual asserts that it is

entitled to summary judgment on each of Plaintiff's claims against Defendant MassMutual and

principally argues (1) that the breach of contract claim fails as a matter of law because the

undisputed facts show that Defendant MassMutual acted in accordance with the terms of the

Policy and Plaintiff has not pointed to – and cannot point to – any provision of the contract that

Defendant MassMutual has violated; (2) that Plaintiff's claims for bad faith, breach of the duty

of good faith and fair dealing, unjust enrichment, and declaratory relief also fail as a matter of

law because they are redundant of Plaintiff's breach of contract claim and because they are

unsupported by the undisputed facts; and (3) that Plaintiff's claim for violation of New York

Insurance Law § 3428 fails because that statute does not apply to life insurance.  *See generally* MassMutual Br.; MassMutual Reply.

On August 23, 2024, Plaintiff filed a Motion to Amend Complaint and for Summary Judgment, which motion each Defendant opposes.  *See* ECF Nos. 58-61.  With respect to his request for summary judgment, Plaintiff argues that "Defendants breached their contractual, common-law and statutory obligations to plaintiff by unreasonably canceling his life insurance policy on the cusp of fulfilling his premium payment obligations, based on his inability to promptly produce old and irrelevant financial documentation pre-dating the policy due to the global shutdown occasioned by the COVID-19 pandemic" – and more specifically argues (1) that "Wintrust's request to surrender the Policy was unreasonable and in bad faith, constituting its breach of the Notes, and resulting in unjust enrichment;" (2) that "by improperly surrendering the Policy and refusing reinstatement, an unjustly enriched Defendant MassMutual breached the insurance policy and its duty of good faith;" (3) that "Defendants failed to provide the requisite statutory notice of surrender;" and (4) that "Policy reinstatement, or a refund of the premium and interest payments, is warranted to include reimbursement of legal fees incurred."  *See generally* Pl. Br.; Pl. Reply.

On March 14, 2025, the Court held oral argument on the instant motions.  *See* March 14, 2025 Minute Entry; *see also* Transcript of March 14, 2025 Oral Argument ("Tr.").  At oral argument, the parties were heard on the motions and the Court directed the parties to file a joint letter with respect to the Merger.  *See* March 14, 2025 Minute Entry; *see also* Tr.  On March 31, 2025, the parties filed the joint letter.  *See* March 31, 2025 Joint Letter, ECF No. 71.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the [summary judgment] motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Liberty Lobby, Inc.*, 477 U.S. at 256; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party meets its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  *See Brandon v. Royce*, 102 F.4th 47, 54-55 (2d Cir. 2024) (quotation omitted).  The nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted), by offering "concrete evidence from which a reasonable juror could return a verdict in his favor," *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 256).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). Bald assertions, completely unsupported by evidence, do not satisfy the opposing party's burden. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). And "speculation alone is insufficient to defeat a motion for summary judgment." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006); *see also Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (noting that "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact" (ellipsis and quotation omitted)).

Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation omitted).

In deciding a motion for summary judgment, a district court properly considers only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "In determining whether summary judgment is appropriate, [a court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). A district court "is duty bound not to weigh evidence or assess the credibility of witnesses." *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *3 (E.D.N.Y. Sept. 25, 2020) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)); *see also Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 143 F.4th 51, 64, 67 (2d Cir. 2025).

When parties cross move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party

whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quotation omitted); *see also Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394 (2d Cir. 2023).

## DISCUSSION

For the reasons set forth below, (1) Defendant MassMutual is entitled to summary judgment on each of Plaintiff's causes of action against Defendant MassMutual, (2) Defendant Wintrust is entitled to summary judgment on each of Plaintiff's causes of action against Defendant Wintrust, (3) Plaintiff is not entitled to summary judgment on any of Plaintiff's causes of action, and (4) Plaintiff's request for leave to amend is denied.

## I.    Breach of Contract

Plaintiff asserts that "[b]y improperly surrendering the Policy and tendering a check to an unauthorized Assignee for the loan debt without Plaintiff's knowledge and consent and without proper notice, Defendants breached their Contracts (Policy, Assignment, Notes, etc.) with Plaintiff." SAC ¶ 63. Specifically, Plaintiff alleges that, "by acting on Wintrust's surrender and cancellation of the policy, MassMutual breached, *inter alia*, the provision of the policy which provides that 'for any assignment to be binding on us, [MassMutual] must receive a signed copy of [the Assignment] at our Home Office.'" SAC ¶ 64. Plaintiff further alleges that, "by surrendering the policy, Wintrust breached, *inter alia*, the Third Amendment to Master Promissory Note by acting as an unauthorized Assignee despite its ratification and confirmation of the Assignment naming FIRST Insurance as the Assignee." SAC ¶ 65.

For the reasons set forth below, Defendants MassMutual and Wintrust are entitled to summary judgment on Plaintiff's cause of action for breach of contract (Second Cause of Action).

## A.    Applicable Law

"To prevail on a breach-of-contract claim in New York, a plaintiff must prove: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach." *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (quotation omitted); *see also Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).[12]  "It is long established that '[a] breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached.'" *Franklin Techs., Inc. v. Encite Inc.*, No. 16-CV-01603, 2019 WL 13236720, at *6 (E.D.N.Y. Mar. 28, 2019) (quoting *Gianelli v. RE/MAX of New York, Inc.*, 41 N.Y.S.3d 273, 274 (2d Dep't 2016)).

As the United States Court of Appeals for the Second Circuit has stated, "[i]t is axiomatic under New York law . . . that the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (alteration accepted) (quotation omitted).  Further, "[i]n a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous." *Id.* "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Id.* (quotation omitted).  "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Id.*  "It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Id.*  "Conversely, as [the Second Circuit has] held, the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

---

[12]  The parties agree that New York law applies.  *See, e.g.*, Tr. 4-5.

integrated agreement." *Id.*; *see also Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) (in the context of a contract dispute, stating that "[a]mbiguity . . . is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way"). A motion for summary judgment may be granted in a contract dispute "when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *See Topps*, 526 F.3d at 68; *see also Fischer & Mandell, LLP*, 632 F.3d at 799 (in the context of a breach of contract claim, stating that "[s]ummary judgment is appropriate if the terms of the contract are unambiguous").

### B.     Defendant MassMutual Is Entitled to Summary Judgment on Plaintiff's Cause of Action for Breach of Contract

There is no genuine dispute as to any material fact with respect to Plaintiff's cause of action for breach of contract and Defendant MassMutual is entitled to summary judgment on Plaintiff's cause of action for breach of contract.

Here, the relevant terms of the Policy, the Assignment Agreement, and the Amended Master Note are unambiguous. The relevant terms are not "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *See Lockheed Martin Corp.*, 639 F.3d at 69.

Neither the assignment provision nor surrender provision of the Policy – or any other provision of the Policy – provides a basis for Plaintiff's breach of contract claim against Defendant MassMutual. Pursuant to its unambiguous terms, the Policy was assignable and could be surrendered in full for its cash surrender value at any time while Plaintiff is living. *See* Policy at 20, 26; MassMutual 56.1 ¶¶ 4-5; *see also* Wintrust 56.1 ¶¶ 5-7. The Policy expressly stated, in relevant part: "[F]or any assignment to be binding on us, we must receive a signed copy of it at our Home Office. We will not be responsible for the validity of any assignment. Once we

receive a signed copy of an assignment, the rights of the Owner and the interest of any

Beneficiary or any other person will be subject to the assignment."  Policy at 20; *see also*

MassMutual 56.1 ¶ 4; Wintrust 56.1 ¶ 5.

The undisputed record evidence reflects that on July 20, 2011, Defendant MassMutual

received a copy of the Assignment Agreement and recorded on Defendant MassMutual's system

that FIRST Insurance was now collateral assignee of the Policy.  MassMutual 56.1 ¶ 15.

Pursuant to the unambiguous terms of the Assignment Agreement, Plaintiff, *inter alia*, assigned,

transferred, pledged, and granted all of his "claims, options, privileges, rights, title and interest

in, to and under" the Policy to FIRST Insurance, its successors and assigns, and granted the

assignee, the "sole right to withdraw from or surrender [the Policy] and receive the surrender

value thereof at any time provided by the terms of [the Policy] and at such other times as the

Insurer may allow."  *See* Assignment Agreement at 3; MassMutual 56.1 ¶ 13.

The record evidence also reflects that in October 2017, Defendant MassMutual received a

letter from Defendant Wintrust indicating that FIRST Insurance merged with and into Defendant

Wintrust's parent company, Lake Forest.  *See* MassMutual 56.1 ¶ 16; *see also* Notice of Merger

at 2; Wintrust 56.1 ¶ 35.  As a result of the Merger, Lake Forest, doing business as Defendant

Wintrust, *see* Notice of Merger at 2, is deemed by operation of law to be both the surviving

corporation, Lake Forest, and the absorbed corporation, FIRST Insurance.  *See U.S. Bank Nat'l

Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 155-56 (2d Cir. 2019) (noting that "a successor by

merger is deemed by operation of law to be both the surviving corporation and the absorbed

corporation, subject to all the liabilities of the absorbed corporation"); *see also Rocket Pharms.,

Inc. v. Lexeo Therapeutics, Inc.*, No. 23-CV-09000, 2024 WL 5135692, at *6 (S.D.N.Y. Dec. 17,

2024).[13]  Accordingly, Defendant Wintrust had the sole right to surrender the Policy and Defendant MassMutual was obligated to honor the Surrender Request.

To the extent that Plaintiff argues that Defendant MassMutual breached some provision of the Policy by accepting the Surrender Request because the Surrender Request was not signed by Plaintiff, *see* Pl. Br. at 18, Plaintiff has failed to demonstrate that the language of the Surrender Request required Plaintiff's signature or was ambiguous.  The Surrender Request expressly provided that for a "[c]ollaterally assigned policy," like the Policy at issue, "[t]he owner and assignee must both sign" except that "if the right being exercised is granted to the assignee, only the assignee's signature is required."  Surrender Request at 8.  Here, only Defendant Wintrust – as assignee with the sole right to withdraw from or surrender the Policy – needed to sign the Surrender Request for it to be valid.

By acting on the Surrender Request, Defendant MassMutual performed in accordance with – rather than breached – the unambiguous terms of the Policy.

Defendant MassMutual is entitled to summary judgment on Plaintiff's cause of action for breach of contract.

### C.   Defendant Wintrust Is Entitled to Summary Judgment on Plaintiff's Cause of Action for Breach of Contract

There is no genuine dispute as to any material fact with respect to Plaintiff's cause of action for breach of contract and Defendant Wintrust is entitled to summary judgment on

---

[13]  Plaintiff's assertion that the Merger was not valid, *see, e.g.*, Pl. Br. at 4; March 31, 2025 Joint Letter at 2-5, is unsupported by record evidence and is unavailing.  *See* Notice of Merger (providing the Articles of Merger regarding First Insurance Funding Corp. filed with the Secretary of State of Illinois).  Notably, after the Merger, Plaintiff recognized and continued to do business with Defendant Wintrust as Lender under the Amended Master Note and party to the Assignment Agreement.  *See, e.g.*, Second Amendment; Third Amendment.  Indeed, post-Merger, Plaintiff executed two amendments to the Master Note, which agreements were "entered into between Adam Margules (the 'Borrower') and [Defendant Wintrust] (the 'Lender')."  *See* Second Amendment; Third Amendment.

Plaintiff's cause of action for breach of contract.

Plaintiff has failed to produce any evidence that establishes that Defendant Wintrust breached any contractual obligation.[14]  Indeed, the undisputed evidence reflects that Defendant Wintrust, as successor by merger to FIRST Insurance, was the authorized assignee under the Assignment Agreement and had the sole right to surrender the Policy and receive the surrender value thereof.  *See* Notice of Merger; MassMutual 56.1 ¶¶ 13-14; *see also* Wintrust 56.1 ¶¶ 18, 22.  And, Plaintiff has failed to establish that Defendant Wintrust breached any "reasonableness obligation" set forth in the Amended Master Note, *see* Pl. Br. at 12-14; Pl. Opp. at 1-3.  The terms of the Master Note expressly permitted Defendant Wintrust to request documents from Plaintiff, *see generally* Master Note, and the record evidence does not reflect that Defendant Wintrust acted unreasonably by requesting certain financial documents to consider underwriting a new financing arrangement more than two months before the Loan matured, *see* May 2020 Maturity Letter.[15]

Defendant Wintrust is entitled to summary judgment on Plaintiff's cause of action for breach of contract.

## II.    Breach of the Duty of Good Faith and Fair Dealing

Plaintiff alleges that Defendants MassMutual and Wintrust breached the duty of good faith and fair dealing "by inducing Plaintiff to bargain with them for an item that was never ultimately provided (life insurance coverage), and by accepting money (premium payments and

---

[14]  In fact, based on the record evidence, it appears that *Plaintiff* failed to perform under the terms of the Amended Master Note by failing to make payments.

[15]  Plaintiff's argument that Defendant Wintrust's request for certain documents was unreasonable in light of the COVID-19 pandemic, *see* Pl. Br. at 12-15, is unpersuasive.  The argument is both legally unsupported and factually unsupported here.

interest payments) for that item but then unilaterally revoking coverage amid a global pandemic and ostensible good-faith negotiations on the cusp of Plaintiff's final premium payment, despite a 10-year history of successfully doing business together." *See* SAC ¶ 79.

Because Plaintiff's cause of action for breach of the duty of good faith and fair dealing is duplicative of his cause of action for breach of contract, Defendants MassMutual and Wintrust are entitled to summary judgment on Plaintiff's cause of action for breach of the duty of good faith and fair dealing (Fifth Cause of Action).

### A.    Applicable Law

Under New York law, a covenant of good faith and fair dealing is implied in every contract, "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (quotation omitted); *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). "The implied covenant does not include any term inconsistent with the terms of the contractual relationship, or create duties which are not fairly inferable from the express terms of that contract." *Bus. Exposure Reduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*, 549 F. Supp. 3d 318, 332 (S.D.N.Y. 2021) (quotation omitted). And breach of this covenant "is merely a breach of the underlying contract." *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris*, 310 F.3d at 80). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* (quoting *Harris*, 310 F.3d at 81). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be

dismissed as redundant." *Id.*

> **B.** **Defendants MassMutual and Wintrust Are Entitled to Summary Judgment on Plaintiff's Cause of Action for Breach of the Duty of Good Faith and Fair Dealing**

Plaintiff's causes of action against Defendants MassMutual and Wintrust for breach of the duty of good faith and fair dealing and for breach of contract rest on the same facts – the allegedly improper surrender/cancelation of the Policy and payment by Defendant MassMutual to Defendant Wintrust. Plaintiff's cause of action for breach of the duty of good faith and fair dealing therefore is duplicative of his cause of action for breach of contract.

Defendants MassMutual and Wintrust are entitled to summary judgment on Plaintiff's cause of action for breach of the duty of good faith and fair dealing.[16]

## III.   Bad Faith

Plaintiff alleges that Defendant MassMutual "acted in bad faith and in breach of the Policy issued to Plaintiff by improperly surrendering and canceling the Policy in the absence of a valid Assignment designating Wintrust as the Assignee." SAC ¶ 68.

Because there is no independent cause of action for bad faith under New York law – and, in any event, Plaintiff's cause of action for bad faith would be duplicative of his cause of action for breach of contract – Defendant MassMutual is entitled to summary judgment on Plaintiff's cause of action for bad faith (Third Cause of Action).

> **A.** **Applicable Law**

Under New York law, "there is no separate tort for bad faith refusal to comply with an insurance contract." *See A & M Warshaw Plumbing & Heating, Inc. v. Mount Vernon Fire Ins.*

---

[16] Although the Court need not reach the merits of Plaintiff's claim for breach of the duty of good faith and fair dealing, the Court notes that even if such claim was not duplicative, Plaintiff's allegations are not supported by record evidence.

*Co.*, No. 24-CV-05430, 2025 WL 69972, at *4 (S.D.N.Y. Jan. 10, 2025).  "The claim of bad

faith conduct is not an independent tort cause of action but a means by which plaintiffs can

obtain punitive damages in a breach of contract action, by establishing that the defendant's

conduct in breaching the contract was so egregious as to violate a duty to the plaintiff that exists

independently of the contract."  *Binder v. Nat'l Life of Vermont*, No. 02-CV-06411, 2003 WL

21180417, at *4 (S.D.N.Y. May 20, 2003) (citing *Acquista v. New York Life Ins. Co.*, 730

N.Y.S.2d 272, 278 (1st Dep't 2001)).

### B.    Defendant MassMutual Is Entitled to Summary Judgment on Plaintiff's Cause of Action for Bad Faith

There is no independent cause of action for bad faith under New York law and, in any

event, Plaintiff's causes of action against Defendant MassMutual for bad faith and for breach of

contract rest on the same facts – the allegedly improper surrender/cancelation of the Policy and

payment by Defendant MassMutual to Defendant Wintrust – and therefore Plaintiff's cause of

action for bad faith would be duplicative of his cause of action for breach of contract.[17]

Defendant MassMutual is entitled to summary judgment on Plaintiff's cause of action for

bad faith.

## IV.    Unjust Enrichment

Plaintiff alleges that "Defendants have received a benefit to the detriment of Plaintiff in

that Defendants received a substantial amount of money from Plaintiff (i.e., interest and premium

payments) without providing the product ($3,568,969.08 in life insurance coverage) that Plaintiff

bargained for" and that "[g]iven Plaintiff's performance and his reasonable expectation that

Defendants would reciprocate by likewise honoring their obligation to provide the finances and

---

[17]  Further, the Court notes that the record evidence reflects that Defendant MassMutual acted in accordance with its obligations under the Policy at all times and there is no evidence of bad faith.

coverage, Defendants will be unjustly enriched, to the unfair detriment of Plaintiff, if permitted to retain Plaintiff's money and revoke Plaintiff's coverage without upholding their end of the bargain." SAC ¶¶ 72-73.[18]

In light of the relevant contracts here, Defendants MassMutual and Wintrust are entitled to summary judgment on Plaintiff's cause of action for unjust enrichment (Fourth Cause of Action).

### A.    Applicable Law

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quotation omitted). Under New York law: "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement.*" *See id.* at 586-87 (quoting *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* at 587 (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987)).

### B.    Defendants MassMutual and Wintrust Are Entitled to Summary Judgment on Plaintiff's Cause of Action for Unjust Enrichment

Plaintiff may not recover in quasi-contract here, where there are valid and enforceable written contracts governing the relevant rights and obligations of the parties.

Defendants MassMutual and Wintrust are entitled to summary judgment on Plaintiff's

---

[18]  Towards the end of 2018, Plaintiff had reduced the death benefit of the Policy from $5,000,000 to $3,568,969.08 because the amount "was a little exorbitant" and he wanted to reduce the interest payments owed to Defendant Wintrust. MassMutual 56.1 ¶ 31.

cause of action for unjust enrichment.

## V.     Declaratory Judgment

Plaintiff's cause of action for declaratory judgment against Defendant MassMutual alleges that "the Policy was improperly surrendered and canceled by Wintrust, an unauthorized Assignee, without Plaintiff's consent and without proper notice, despite Plaintiff's timely and complete payments towards coverage over the course of ten years totaling $280,518.95 in interest alone, and despite being on the cusp of fulfilling his premium payment obligations," *see* SAC ¶ 60, and Plaintiff requests "[a] Court Order reinstating the Policy," *see* SAC ¶ 61.

For the reasons set forth below, the Court declines to exercise jurisdiction over Plaintiff's cause of action for declaratory judgment and Defendant MassMutual is entitled to summary judgment on that cause of action (First Cause of Action).

### A.     Applicable Law

The Federal Declaratory Judgment Act ("DJA") provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  "In other words, the DJA creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (quotation omitted).

District courts "retain 'broad discretion' to decline jurisdiction under the DJA."  *Id.* at 99 (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012)).  The Second Circuit has stated that the following considerations, to

the extent they are relevant in a particular case, should inform a district court's exercise of such discretion: "(1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction." *See id.* at 99-100 (alterations accepted) (quotations and citations omitted).  District courts have "broad discretion to weigh" these factors and "no one factor is sufficient, by itself, to mandate that a district court exercise – or decline to exercise – its jurisdiction to issue a declaratory judgment." *See id.* at 100.  "[T]hese factors are non-exhaustive, with district courts retaining wide latitude to address other factors as relevant to the ultimate question of whether the normal principle that federal courts should adjudicate claims over which they have jurisdiction should yield to considerations of practicality and wise judicial administration in a particular case." *Id.* (alterations accepted) (quotations and citations omitted).  "Courts generally reject a DJA claim when other claims in the suit will resolve the same issues." *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) (collecting cases); *see also Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08-CV-10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) (finding that "declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim").

## B.   The Court Declines to Exercise Jurisdiction Over Plaintiff's Request for Declaratory Judgment

Upon consideration of the relevant factors, the Court declines to exercise jurisdiction

over Plaintiff's request for a declaratory judgment concerning reinstatement of the Policy. Most

notably, any declaratory judgment would serve no useful purpose in clarifying or settling the

legal issues involved here because resolution of Plaintiff's cause of action for breach of contract

– discussed above – serves that purpose.[19]

Defendant MassMutual is entitled to summary judgment on Plaintiff's cause of action for

declaratory judgment.

## VI. Violation of New York Banking Law § 576

Plaintiff alleges that Defendant Wintrust "violated New York Banking Law § 576 by

failing to provide the requisite notices to Plaintiff and his insurance agent prior to surrendering

the policy and by failing to issue or otherwise tender Plaintiff a check in the amount of the gross

unearned premiums." SAC ¶ 82.

For the reasons set forth below, Defendant Wintrust is entitled to summary judgment on

Plaintiff's cause of action for violation of New York Banking Law § 576 (Sixth Cause of

Action).

### A. Applicable Law

New York Banking Law § 576(1) ("Cancellation of insurance contract upon default")

provides in relevant part:

> When a premium finance agreement contains a power of attorney or other
> authority enabling the premium finance agency to cancel any insurance contract
> or contracts listed in the agreement, the insurance contract or contracts shall not
> be cancelled unless such cancellation is effectuated in accordance with the
> following provisions:
>
> (a) Not less than ten days written notice shall be mailed to the insured at his last
> known address as shown on the records of the premium finance agency, of the

---

[19]  Even were the Court to exercise jurisdiction over this cause of action, Plaintiff would not be
entitled to the declaratory relief sought for the reasons set forth above – Plaintiff has not
demonstrated any breach by Defendant MassMutual.

intent of the premium finance agency to cancel the insurance contract unless the default is cured within such ten day period and that at least three days for mailing such notice is added to the ten day notice. A copy of the notice of intent to cancel shall also be mailed to the insurance agent or broker.

. . .

(d) After the notice in paragraph (a) above has expired, the premium finance agency may thereafter, in the name of the insured, cancel such insurance contract by mailing to the insurer a notice of cancellation stating when thereafter the policy shall be cancelled, and the insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract. A copy of the notice of cancellation shall also be mailed to the insured.

. . .

(f) The insurer or insurers within a reasonable time not to exceed sixty days after the effective date of cancellation, shall return whatever gross unearned premiums are due under the insurance contract or contracts on a pro rata basis to the premium finance agency for the benefit of the insured or insureds. However, upon such cancellation the insurer or insurers shall be entitled to retain a minimum earned premium on the policy of ten percent of the gross premium or sixty dollars, whichever is greater.

N.Y. Banking Law § 576(1).

New York Banking Law § 576(2) provides:

[The provisions of New York Banking Law § 576(1)] relating to cancellation by a premium finance agency of an insurance contract and the return by an insurer of unearned premiums to the premium finance agency also apply to the surrender by a premium finance agency of an insurance contract providing life insurance and the payment by the insurer of the cash value of the contract to the premium finance agency, except that the insurer may require the surrender of the insurance contract.

N.Y. Banking Law § 576(2).

### B.    Defendant Wintrust Is Entitled to Summary Judgment on Plaintiff's Cause of Action for Violation of New York Banking Law § 576

There is no genuine dispute as to any material fact with respect to Plaintiff's cause of

action for violation of New York Banking Law § 576 and Defendant Wintrust is entitled to

summary judgment on Plaintiff's cause of action for violation of New York Banking Law § 576.

36

The record evidence does not establish that Defendant Wintrust violated the requirements of New York Banking Law § 576 for notice of intent to cancel the Policy or for the return of any gross unearned premiums.[20]

The record evidence reflects that on July 15, 2020, Defendant Wintrust sent a letter to Plaintiff and Hillert notifying them of Defendant Wintrust's intent to surrender the Policy unless the default was cured on or before July 30, 2020.  *See* Wintrust 56.1 ¶¶ 52-54; July 2020 Maturity Letter (advising Plaintiff that the Loan "matured on July 15, 2020," that payment "in the amount of $954,931.88" was due on such date, and that the letter is notification "that payment of all amounts due to Lender under [the Amended Master Note] must be received by Lender no later than July 30, 2020" and stating that failure to pay off the amount due on or before July 30, 2020 would cause Defendant Wintrust, *inter alia*, "to exercise any and all remedies available to Lender under [the Amended Master Note], including, without limitation, surrender of the Policy" (emphasis omitted)).  And there is no dispute that Plaintiff and Hillert received the notice.[21]

In addition, the record evidence reflects that there were no unearned premiums at the time Defendant Wintrust surrendered the Policy.  *See* Wintrust Interrogatory Responses at 18.

Defendant Wintrust is entitled to summary judgment on Plaintiff's cause of action for

---

[20] Although the Second Amended Complaint references § 576(1)(a), § 576(1)(d), and § 576(1)(f), *see* SAC ¶¶ 37, 39, 41, Plaintiff's briefing in opposition to Defendant Wintrust's motion appears to address only § 576(1)(a) and § 576(1)(f), *see* Pl. Opp. at 9-10; *see also* Pl. Br. at 21.

[21] Even after Defendant Wintrust provided Plaintiff and Hillert with notice of its intent to exercise its rights under the Amended Master Note, which included surrendering the Policy, Defendant Wintrust continued to give Plaintiff additional extensions of time to cure the default.  *See* Wintrust 56.1 ¶ 57.

violation of New York Banking Law § 576.[22]

## VII.    Violation of New York Insurance Law § 3428(c)

Plaintiff alleges that because Defendant MassMutual honored Defendant Wintrust's surrender and cancellation of the Policy despite Defendant Wintrust's alleged violation of New York Banking Law § 576, Defendant MassMutual violated New York Insurance Law § 3428(c). *See* SAC ¶ 86.  However, New York Insurance Law § 3428 does not apply to life insurance policies, *see* N.Y. Ins. Law § 3428, which Plaintiff has acknowledged, *see* Tr. 48-49.

Because New York Insurance Law § 3428 does not apply to life insurance policies, it cannot serve as the basis for a claim related to Plaintiff's life insurance policy.

Defendant MassMutual is entitled to summary judgment on Plaintiff's cause of action for violation of New York Insurance Law § 3428(c) (Seventh Cause of Action).

## VIII.   Denial of Leave to Amend

Plaintiff requests "the Court's permission to amend his complaint to simply swap out the reference to Insurance Law § 3428(c) in favor of Insurance Law § 3211(a)(1)," noting that "a different section of the Insurance Law was inadvertently cited" and attaching a Proposed Verified Third Amended Complaint.  *See* Pl. Br. at 22-23; Proposed Verified Third Amended Complaint, ECF No. 58-15.  The Court denies Plaintiff's request for leave to amend.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or

---

[22] As persuasively argued by Defendant Wintrust, *see* Wintrust Reply at 9; Wintrust Opp. at 12-13, Plaintiff's assertion that he should be granted summary judgment on his cause of action for violation of New York Banking Law § 576 because Hillert received notice by email rather than regular mail, *see* Pl. Br. at 21-22, is unavailing.

dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Plaintiff's request to amend the complaint *for a third time* – which is opposed by Defendants – is denied due to undue delay.  Plaintiff's proposed amendment would introduce a new claim under a different statutory provision at this late stage in the litigation – after discovery has closed and after Defendant MassMutual has filed its motion for summary judgment. Notably, Plaintiff was put on notice that New York Insurance Law § 3428 does not apply to life insurance policies months before the instant motions were filed.  *See* ECF No. 40 at 3 (April 11, 2024 letter of Defendant MassMutual).[23]

 Plaintiff's request for leave to amend is denied.

## CONCLUSION

As set forth above, Defendant Wintrust's Motion for Summary Judgment, ECF No. 55, is GRANTED; Defendant MassMutual's Motion for Summary Judgment, ECF No. 62, is GRANTED; and Plaintiff's Motion to Amend Complaint and for Summary Judgment, ECF No. 58-1, is DENIED.

The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

/s/ Diane Gujarati
DIANE GUJARATI
United States District Judge

Dated:  September 3, 2025
            Brooklyn, New York

---

[23] Also notably, at oral argument, Defendant MassMutual argued that the statute that Plaintiff seeks to "swap" in is not analogous to New York Insurance Law § 3428 and is not applicable on the record facts here.  *See* Tr. 50.